UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

SHELDA HARRIS BANNON, as
parent and natural guardian of her daughters,
SHARAH HARRIS and BRITTNI HARRIS,

                          Plaintiffs,

vs.

CASE NUMBER: 02-80438 CIV
JUDGE:  DANIEL T. K. HURLEY
MAGISTRATE FRANK J. LYNCH

THE SCHOOL DISTRICT OF
PALM BEACH COUNTY, a body corporate,
ED HARRIS, individually and in his capacity as Principal
of BOCA RATON COMMUNITY HIGH SCHOOL, and
JOE SABIA, individually and in his capacity as Girl's
Basketball Coach of BOCA RATON COMMUNITY
HIGH SCHOOL,

                          Defendants.

_____/

**DEFENDANTS'
MOTION FOR
SUMMARY
JUDGMENT AND
MEMORANDUM
OF LAW**

## MOTION FOR SUMMARY JUDGMENT

COME NOW, the Defendants, THE SCHOOL DISTRICT OF PALM BEACH COUNTY, ED HARRIS, individually and in his capacity as Principal of BOCA RATON COMMUNITY HIGH SCHOOL, and JOE SABIA, individually and in his capacity as Girl's Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL, and pursuant to Fed.R.Civ.P. 56, moves for Summary Judgment in their favor as to all issues in this litigation, and alleges:

1.      The two minor Plaintiffs have brought separate claims.   Plaintiff SHARAH HARRIS alleges that Defendants violated her constitutional rights of freedom of expression, freedom of religion and equal protection because school staff required her to remove religious expressions from murals she had painted on school property as part of a school project.  Her sister, Plaintiff BRITTNI HARRIS, alleges that Defendants

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 2

Coach JOE SABIA and THE SCHOOL DISTRICT OF PALM BEACH COUNTY have

violated her rights under Title IX by the coach's alleged use of profanity.

2.    The pleadings, depositions and other documents on file in this cause show

that there are no genuine issues of material facts and the Defendants are entitled to

judgment as a matter of law as to the allegations contained in Plaintiff's Complaint (a

copy of Plaintiff's Complaint is attached hereto as Exhibit "1").

### UNDISPUTED FACTS

1.    SHELDA HARRIS BANNON is the parent and natural guardian for her

daughters, SHARAH HARRIS and BRITTNI HARRIS.

2.    THE SCHOOL DISTRICT OF PALM BEACH COUNTY is a body

corporate as described in Fla. Stat. § 1001.40.

3.    BOCA RATON COMMUNITY HIGH SCHOOL is a high school situated

in Boca Raton, Florida and is one of the schools under the management and control of

THE SCHOOL DISTRICT OF PALM BEACH COUNTY.

4.    JOE SABIA is a teacher, and also the coach of Girl's Basketball, at BOCA

RATON COMMUNITY HIGH SCHOOL.

5.    ED HARRIS is the Principal of BOCA RATON COMMUNITY HIGH

SCHOOL.

6.    At the time of the incident described in her Complaint (approximately

February 2002), SHARAH HARRIS was a student in the 12th grade at BOCA RATON

COMMUNITY HIGH SCHOOL and graduated in June 2002.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 3

7.     At the time of the incident described in the Complaint, SHARAH
HARRIS was a member of the Fellowship of Christian Athletes, a student club at BOCA
RATON COMMUNITY HIGH SCHOOL.

8.     At the time of the incident described in her Complaint (Winter-Spring
2002), BRITTNI HARRIS was an 11th grade student at BOCA RATON COMMUNITY
HIGH SCHOOL and transferred to a different public high school, at her request, after the
2001-2002 school year.

9.     A school project hosted by the Student Government involving the painting
of murals was conducted at BOCA RATON COMMUNITY HIGH SCHOOL on
February 9, 2002.  The murals were painted on wooden 4'x8' construction panels which
were erected by School District contractors as part of a remodeling/modernization project
undertaken by THE SCHOOL DISTRICT OF PALM BEACH COUNTY at the high
school.  These panels were located throughout the school.  The Fellowship of Christian
Athletes paid $5.00 to participate in the project.

10.    Mrs. Katherine Roberts was the teacher/sponsor of the Student
Government at that time.  Coach Rob Sweeten and Coach Brandon Kornblue were the
sponsors of the Fellowship of Christian Athletes at that time.

11.    For her mural, SHARAH HARRIS chose a religious subject which
contained a verse from the Bible and the words "God Loves You.  What Part of Thou
Shalt Not Don't You Understand?  God".  Other murals painted by SHARAH HARRIS
included the sun as a background and a cross, with the word "Jesus" or "God" included
on some of the murals.  The ideas for some of the murals were given to SHARAH

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 4

HARRIS by Coach Kornblue who had apparently printed them off of a website called "The God Signs". (Deposition of Sharah Harris, p. 47.)

12.     THE SCHOOL DISTRICT OF PALM BEACH COUNTY has a policy on religious freedom and expression, a true and correct copy of which is attached hereto as Exhibit "2".

13.     Mr. ED HARRIS, the Principal of the School, requested that the cross and words "God" and "Jesus" be deleted from the murals.

14.     Plaintiff, BRITTNI HARRIS, was a member of the BOCA RATON COMMUNITY HIGH SCHOOL Girl's Basketball Team during the 2001-2002 season.

## MEMORANDUM OF LAW

Summary Judgment should be entered when the parties do not genuinely dispute any material fact and when the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, pp 322-323 (1986).   Thus summary judgment is warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

To defeat a Motion for Summary Judgment, the non-moving party may not rely on mere allegations, but must raise significant probative evidence to withstand summary judgment. LaChance v. Duffy's Draft House, Inc, 146 F.3d 832, 833 (11th Cir. 1998).

In evaluating a Motion for Summary Judgment, the Court should view the evidence in the light most favorable to a non-moving party.   Matsushita Electric

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 5

Industrial Co. Ltd., et al. v. Zenith Radio Corp. et al., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

## CLAIMS OF SHARAH HARRIS

The claims of the Plaintiff SHARAH HARRIS arise out of a school project whereby students and student organizations were allowed to paint murals on 4'x8' construction panels located throughout the school. (Deposition of Ed Harris, p. 34, l. 3; p. 34, l. 17.) The school was undergoing a modernization construction project commissioned by the Palm Beach County School Board on the high school which is School District property. As her part of the project, SHARAH HARRIS painted murals with specific, traditional Christian symbols and messages. The Principal (through a teacher) required SHARAH HARRIS to paint over those portions of the murals containing the words "God", "Jesus", and the symbol of the cross. Plaintiff SHARAH HARRIS claims that her rights of religious expression were violated by the Principal's direction to cover up the overtly Christian symbols and words.

The Plaintiff, SHARAH HARRIS, has sued the Defendants ED HARRIS, as Principal of BOCA RATON COMMUNITY HIGH SCHOOL, and THE SCHOOL DISTRICT OF PALM BEACH COUNTY for violation of the minor Plaintiff's right of free speech, free exercise of religion, and equal protection of the laws under the First and Fourteenth Amendments of the United States Constitution, and Articles I, II, III, and IV of the Constitution of the State of Florida.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 6

**The issue before the Court is whether the proselytizing message on public school property (see paragraph 9 of the Undisputed Facts), is permitted within the constitutional parameters of the United States or Florida Constitutions.**

Obviously, the Court's review must consider the student's freedom of expression of religion in the context of the school's constraints under the Establishment clause and the need to maintain order in the school.

Factually, it is not disputed that the 4'x8' plywood boards were school property located on a public school site. In addition, it was a school-sponsored project (albeit a student government project) and the project had a faculty sponsor, Mrs. Roberts. (Deposition of Ed Harris, p. 31, l.10; p. 32, l. 5)

The murals were located on the main hallways of the school which would have remained for the duration of the construction project. The message therefore would be viewed by many students over an extended period of time and would subject all students of varying beliefs to its proselytizing message. Thus, other students would be unwillingly exposed to religion in the public schools contrary to the U.S. Supreme Court's statement in Lee v. Weisman, 505 U.S. 577, 112 S. Ct. 2649 (1992) (where the Court said that a student has the right to avoid unwanted exposure to religion in the public schools.) That Court went on to comment on the particular concerns about subjecting captive students (versus adults) to religious exercises:

> The potential influence in a school environment is much greater because of the amount of control faculty members and administrators exert upon the students, as well as the ability to limit the movement of students during religious exercises.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 7

Therefore, the Court concluded that religious expression in the schools carries a particular risk of indirect coercion, (Lee, p.578, citing Engel v. Vitale, 370 U.S. 421). Although the minor Plaintiff complains that her exercise of religion was curtailed, the principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment clause. (Lee, supra, p. 587) In fact, the Courts have been particularly vigilant in monitoring compliance with the Establishment clause in schools. (See Washegesic v. Bloomingdale Public Schools, 813 F. Supp. 559 (S.D. MI 1993) for an excellent history of cases concerning the Establishment clause and schools. That case required a school to remove an artist's painting of Christ.)

Since students are necessarily a captive audience, who may be required to attend classes in order to graduate, their situation is not comparable to adults who may come and go of their own free will. Therefore, some of the cases on religious freedom that may be applicable to adults will not necessarily apply to school settings. (Lee, supra, pp. 593, 596)

The instant case is easily distinguished from a student-initiated expression such as a student essay. In that instance, presumably a teacher would solicit a student's thoughts on a particular subject and the response would be transitory; the student would not necessarily subject unwilling bystanders to his or her views over an extended period of time. Conversely, in the instant case, students going from one class to another would have to pass by this particular display for several months and, therefore, would be a captive audience, unable to avoid the message of the sectarian display. In other words,

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 8

the students would be involuntarily subjected to proselytizing rather than being willing participants.

Plaintiff apparently contends that any student led or student initiated religious expression in the schools is constitutionally protected. This is not true.

In Santa Fe Independent School District v. Jane Doe, 530 U.S. 290, 120 S. Ct. 2266 (2000), the United States Supreme Court stressed that even student initiated invocations prior to football games would not be protected since the invocations took place on government property and were government sponsored, school related events, as the audience may perceive the message as a public expression of majority views delivered with the school district's approval. Likewise, in the instant case, the religious expression, although claimed to be student initiated, was on government (school) property, school sponsored, which would certainly lead an audience to perceive the message was approved by the school administration.

Students look to their principal for assurance that their learning environment and school property will be welcoming, comfortable and not persuasive of a specific religious doctrine. In Joki v. Board of Education of the Schuylerville Central School District, N.Y. 745 F.Supp. 823 (N.D.N.Y, 1990), the case most compelling a summary judgment, a student painting with Christian symbolism (depicting the crucifixion of Christ) was displayed at school. The artwork was completely initiated and executed by a student in the school auditorium as part of a plan to allow senior students to decorate the school with their original artwork. The Court held that the Christian theme in a school building

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 9

(even though painted entirely by a student) violated the Establishment clause of the First Amendment, by implicitly endorsing a particular religion.

Students may speak and express themselves about religion so long as religion is not perceived as being advanced or sponsored by the school. In the case at bar, since the wooden plywood panel was school property, the religious message on the school property would have the effect of communicating government endorsement. The United States Constitution does not authorize (under the guise of freedom of speech) that a school can be used directly for religious advertising or proselytizing. SHARAH HARRIS admits that it was her intent to use the panel to get others to accept her belief and to promote her religion. (Deposition of Sharah Harris, p. 64, l. 1-4; p. 72. l. 7-10) Government must remain religiously neutral. By way of hypothetical, is there any doubt that a 4'x8' message stating, "Christ is not the Messiah" would be prohibited on school property? The message is clearly not religiously neutral and, in fact, would be seen as endorsing a particular belief likely to offend students who did not share that particular view. Likewise, a satanic message, i.e., "Satan is God" would likely be equally prohibited. Any sign on school grounds as large as 4'x8' which advertises and preaches a particular religious doctrine, would be perceived to bear the imprimatur of the school.

Speaking to this issue, in Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192 the Court declared unconstitutional the posting of the Ten Commandments in the classroom, even though the posted copies were financed by private voluntary contributions. The presumed purpose to entice students to read or meditate upon them was deemed a

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 10

violation of the Establishment clause.   They were clearly religious (biblical and non neutral) views located on government property, giving the appearance of endorsement.

Aside from neutrality, a principal's other legitimate overriding concern is to maintain order and discipline so that the process of education is not impaled.   "Order and discipline are part of any high school's basic educational mission; without them there is no education."   Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 266; 108 S. Ct. 562 (1988).

The Defendant Principal ED HARRIS was rightfully concerned that the controversy surrounding the religious paintings would distract the school from its educational mission.   In fact, the very first school morning after the mural was painted, class time was already being diverted to discussions of the mural rather than being spent on the educational mission as admitted even by Plaintiff SHARAH HARRIS in her deposition. (Deposition of Sharah Harris, p. 90, ll. 10-24.)

The Principal also testified in his deposition that he was concerned about the order and educational mission of the school if he allowed the mural in its entirety to remain.   It was, at the very least, according to Ed Harris' deposition, a distraction. (Deposition of Ed Harris, p. 83, l.8)   It was the subject of much conversation (Deposition of Ed Harris, p. 48, l.22; p. 49, l. 19; p. 51, l. 9; p. 52, l. 12) and many representatives of the media were at school that day.  (Deposition of Ed Harris, pp. 96-97)   In addition, Ed Harris testified that several gang symbols and profanity, which had been painted on murals, were removed at his direction for the same reason. (Deposition of Ed Harris, p. 47, l. 23-25)   A principal is authorized to prevent expression which is likely to lead to

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 11

disorder and discord.  Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, p. 266; 108

S.Ct. 562.

In this instance, the student adviser, a teacher, Mrs. Roberts, questioned the

appropriateness of the mural after its completion and advised Principal Harris of her

concerns.  (See deposition of Ed Harris, p. 45, l. 8-20.)  After Mrs. Roberts voiced her

concerns, Principal Harris heard rumors of other concerns and took all of the debate as an

indication that there was a controversy which would be disruptive to his school.

(Deposition of Ed Harris, p. 83, l. 8; p. 48, l. 13)

In Hazelwood, Id., p. 571, the Court declared "we hold that educators do not

offend the First Amendment by exercising editorial control over the style and content of

student's speech and school sponsored expressive activities so long as their actions are

reasonably related to legitimate pedagogical concerns."  In Hazelwood, the

administration's editing of articles in a school newspaper relating to pregnancy and birth

control were upheld.  The court said:

> A school need not tolerate student speech that is
> inconsistent with its basic educational mission, even though
> the government could not censor similar speech outside the
> school....We thus recognize that the determination of what
> manner of speech in the classroom or in school assembly is
> inappropriate properly rests with the School Board.

(Hazelwood, Id., citing Bethel School District No. 403 v. Fraser, 478 U.S. 675, 106 S. Ct.

3159 at pp 3164-3165).

In a case strikingly similar to the case at bar, Gernetzke v. Kenosha Unified

School District No. 1, 274 F.3d 464 (7th Cir. 2001) the school principal required the

removal of a cross in a student painted mural on school property.  In that case (decided

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 12

solely under the Equal Access Act even though the plaintiff sued for constitutional

violations), the principal's actions were upheld and insulated from liability.  The Court

did not reach the merits of the constitutional questions, but (in dicta) implied that the

result would be no different if decided under the First Amendment rather than the Equal

Access Act, stating: "we shall not conceal our doubts that the First Amendment has a

broader scope than the Equal Access Act".  The Court went on to say that:

> "...the First Amendment has been sensibly interpreted to
> allow school authorities greater control over the free speech
> of students than the State is permitted to exercise over the
> free speech of adults engaged in politically expression in
> the normal venues.  A school need not tolerate student
> speech that is inconsistent with its basic educational
> mission...even though the government could not censor
> similar speech outside the school".

Id., p. 467, citing Hazelwood, supra.

Turning now to the Plaintiff's claim for denial of equal protection it is readily

apparent that there are insufficient facts to support this claim.  The only allegation by the

Plaintiff is that they were singled out to cover up their religious mural.  This claim is not

supported by the evidence, as other students' non-religious murals were also covered up

as inappropriate (see deposition of Ed Harris, p. 47, l. 23-25), and this allegation, even if

true, would be insufficient to constitute a denial of equal protection.

For all of the foregoing reasons, the Defendants, THE SCHOOL DISTRICT OF

PALM BEACH COUNTY and ED HARRIS, are entitled to a summary judgment as a

matter of law on the claims of SHARAH HARRIS for violation of her constitutional

rights of freedom of expression, freedom of religion, and equal protection.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 13

## CLAIMS OF BRITTNI HARRIS

The Plaintiff, BRITTNI HARRIS, has filed claims based on alleged gender discrimination and violation of Title IX. Title IX provides, in pertinent part that "no person...shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. The Supreme Court has also recognized and implied a private cause of action for money damages in Title IX cases of intentional sexual discrimination. In the instant case, the only allegation against Defendant, Coach JOE SABIA is that he used profanity in the presence of the minor Plaintiff. Although there is a genuine issue of material fact as to whether or not Coach JOE SABIA actually used profanity, there is no genuine issue as to whether or not the use of profanity alone constitutes a violation of Title IX. In his deposition, Coach JOE SABIA vehemently denies using profanity at any time directed at Defendant BRITTNI HARRIS or to team members (deposition of Joe Sabia, p. 48 and 49), although he admits the possibility of unintentional utterances of profanity to himself under his breath. BRITTNI HARRIS has testified that he did use profanity. (Deposition of Brittni Harris, p. 13, l. 22)

However, for purposes of this Motion for Summary Judgment, all facts must be construed in the light most favorable to the non-moving party. Therefore, assuming arguendo that Coach Sabia did use profanity, there is absolutely no evidence whatsoever that this was discriminatory or sexually harassing.

For the Plaintiff to recover against Coach JOE SABIA, the Plaintiff must show (1) that Plaintiff is a member of a protected class; (2) that Plaintiff was subject to unwelcome

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 14

sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter conditions of Plaintiff's education and create an abusive educational environment.   There is clearly no evidence whatsoever that any alleged harassment (assuming that profanity alone can ever even constitute legal harassment) was based on gender.   In addition, the courts should consider the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating rather than a mere offensive utterance, and whether it unreasonably interferes with performance.   Brown v. Hot, Sexy & Safer Productions, Inc., 68 F.3d 525 (1st Cir. 1995).   Therefore, Coach JOE SABIA is entitled to a summary judgment on the Title IX claim.   The SCHOOL DISTRICT OF PALM BEACH COUNTY is also entitled to a summary judgment on these claims for the reason set forth in the following section.

## SUMMARY JUDGMENT ON CLAIMS AGAINST THE SCHOOL DISTRICT OF PALM BEACH COUNTY

THE SCHOOL DISTRICT OF PALM BEACH COUNTY is entitled to summary judgment on the Title IX and other claims.   THE SCHOOL DISTRICT OF PALM BEACH COUNTY is not liable for Title IX violations of its teachers under a respondeat superior theory.   To recover against THE SCHOOL DISTRICT OF PALM BEACH COUNTY for JOE SABIA's acts, the Plaintiff must show, in addition to the elements necessary to prove a claim against JOE SABIA, that THE SCHOOL DISTRICT OF PALM BEACH COUNTY acted with "deliberate indifference" to known acts of harassment.   Davis v. Monroe County Bd. of Education, 526 U.S. 629, 119 S.Ct. 1661. Therefore, as there is a complete absence of proof on this issue, the SCHOOL DISTRICT OF PALM BEACH COUNTY must prevail.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 15

The Plaintiff's remaining claims against THE SCHOOL DISTRICT OF PALM BEACH COUNTY are brought pursuant to 42 U.S.C. §1983. The Plaintiff, SHARAH HARRIS contends that the cross decision violated her First and Fourteenth Amendment right giving rise to a cause of action under §1983. Plaintiff, BRITTNI HARRIS, appears (although the Complaint is not clear) to be alleging that she was denied equal protection thereby giving rise to a cause of action under §1983. Regardless of the District employee's liability, the District contends that it did nothing to deprive the Plaintiff of any federally protected right and, therefore, cannot be held liable under §1983.

Local governments are not vicariously liable under §1983 for the constitutional torts of their employees or agents. Rather, liability under §1983 may only ensue:

> ...when execution of a government's policy or custom whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.

Monell, et al. v. Department of Social Services of the City of New York, et al., 436 U.S. 658, 693; 98 S.Ct. 2018 (1978).

Thus, there can be §1983 liability in this case only if THE SCHOOL DISTRICT OF PALM BEACH COUNTY itself caused the constitutional violations at issue. In order to state a cause of action against THE SCHOOL DISTRICT OF PALM BEACH COUNTY under §1983 for the acts of its officials, the Plaintiffs must allege that they were deprived of their constitutional rights pursuant to a policy or custom of THE SCHOOL DISTRICT OF PALM BEACH COUNTY. See Monell, supra.

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 16

The religious expression policy of THE SCHOOL DISTRICT OF PALM BEACH COUNTY is set out in paragraph 12, Exhibit "A" of the Undisputed Facts. The policy is religiously neutral. Plaintiff has alleged that the Principal was acting pursuant to a SCHOOL DISTRICT OF PALM BEACH COUNTY policy or custom when he denied the inclusion of the religious symbols. However, the Plaintiff has failed to identify or describe the improper policy. To the contrary, The SCHOOL DISTRICT OF PALM BEACH COUNTY'S policy speaks for itself and does not support any allegation that the policy is discriminatory or violative of constitutional rights. Absent official policy or custom, which Plaintiffs have failed to allege or present, THE SCHOOL DISTRICT OF PALM BEACH COUNTY cannot be held liable under §1983. Plaintiffs have not shown a direct causal link between any policy or custom of THE SCHOOL DISTRICT OF PALM BEACH COUNTY and their alleged constitutional deprivations.

<u>SUMMARY JUDGMENT SHOULD BE GRANTED<br>BASED ON MOOTNESS AS TO CLAIMS FOR<br>DECLARATORY RELIEF AND INJUNCTION</u>

It is undisputed that SHARAH HARRIS was a senior at the time of the painting of the murals. She graduated that year and, therefore, any claims for injunctive or declaratory relief for violation of religious freedom are moot. Additionally, BRITTNI HARRIS, who was a junior at the time of the alleged incidents involving basketball coach, JOE SABIA, requested and was granted a transfer to another public school. It is undisputed that she is currently on the basketball team at the other public high school, making her claims moot. It is well established that once a student graduates he or she no longer has a live case or controversy justifying declaratory or injunctive relief against a

Bannon v. The School District of Palm Beach Co., et al.
Case No. 02-80438 CIV
Page 17

school's action or policy (Cole v. Oroville Union High School District, 228 F.3d 1092

(9th Cir. 2000).

Finally, as to the Title IX claim, the Plaintiff must first file a Complaint with the

Office of Civil Rights, which Plaintiff failed to do.  Plaintiff has failed to exhaust her

administrative remedies.

WHEREFORE, Defendants, THE SCHOOL DISTRICT OF PALM BEACH

COUNTY, ED HARRIS, individually and in his capacity as Principal of BOCA RATON

COMMUNITY HIGH SCHOOL, and JOE SABIA, individually and in his capacity as

Girl's Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL, move this

Court to enter Summary Judgment in favor of the Defendants on all claims and any

further and additional relief as the Court deems appropriate.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished by mail this 2-7 day of January, 2003 to:

William O. Solms, Jr., Esquire
Solms & Price, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143

Steven H. Aden, Esquire
The Rutherford Institute
P.O. Box 7482
Charlottesville, VA 22901

THE SCHOOL DISTRICT OF PALM
BEACH COUNTY
3318 Forest Hill Boulevard, Ste. C302
West Palm Beach, FL  33406
Tel.: 561-434-8750  Fax: 561-434-8105

By:_____
      SANDRA BOSSO-PARDO, ESQ.
      Fla. Bar No.: 275042

02-C0438

CIV-MIDDLEBROOKS

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE
CIVIL CASE NO. SELTZER/AC

SHELDA HARRIS BANNON, as
parent and natural guardian of her daughters,
SHARAH HARRIS and BRITTNI HARRIS,

                    Plaintiffs,

vs.

THE SCHOOL DISTRICT OF
PALM BEACH COUNTY, a body corporate,
ED HARRIS, individually and in his capacity as principal of
BOCA RATON COMMUNITY HIGH SCHOOL, and
JOE SABIA, individually and in his capacity as Girl's
Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL,

                    Defendants.

_____/

NIGHT BOX
FILED

MAY 16 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## COMPLAINT

SHELDA HARRIS BANNON, as parent and natural guardian for her daughters, SHARAH

HARRIS and BRITTNI HARRIS, minors Plaintiffs, hereby file this Complaint against THE

SCHOOL DISTRICT OF PALM BEACH COUNTY, a body corporate, ED HARRIS, individually

and in his capacity as principal of BOCA RATON COMMUNITY HIGH SCHOOL, and JOE

SABIA, individually and in his capacity as Girl's Basketball Coach of BOCA RATON

COMMUNITY HIGH SCHOOL for violations of rights secured by the United States and Florida

constitutions and allege:

PLAINTIFF'S COMPLAINT                                                        PAGE 1

EXHIBIT "1"

## I. PARTIES

1.   SHELDA HARRIS BANNON, for her daughters, SHARAH HARRIS and BRITTNI HARRIS, (herein "Plaintiffs") are natural persons who presently and at all times material hereto reside in Boca Raton, Florida.

2.   Defendant SCHOOL DISTRICT OF PALM BEACH COUNTY, is a body corporate and a duly appointed agency of Palm Beach County, a governmental subdivision of the State of Florida. The SCHOOL DISTRICT OF PALM BEACH COUNTY (herein "DISTRICT") is the governmental subdivision or agency of Palm Beach County, Florida having control and oversight of the primary and secondary educational functions of the county, including but not limited to Boca Raton High School, at the time of the events giving rise to the claims alleged herein.

3.   Defendant ED HARRIS in his capacity as principal of Boca Raton High School and the DISTRICT have conducted themselves in such a manner to substantially contribute to or cause, in part or in whole, the deprivation of rights, breaches of contract and/or wrongs alleged herein for which Plaintiffs claim relief.

4.   Defendant JOE SABIA in his capacity as Girl's Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL and the DISTRICT have conducted themselves in such a manner to substantially contribute to or cause, in part or in whole, the deprivation of rights, breaches of contract and/or wrongs alleged herein for which Plaintiffs claim relief.

## II. JURISDICTION, VENUE, AND DEMAND FOR JURY TRIAL

5.      This action is brought to remedy discrimination on the basis of religion. Jurisdiction of the

subject matter of this action is established in this court under 28 U.S.C. Sec. 1331 and 1343

(4) insofar as the causes of action arise under the Constitution, statutes and common law of

the United States, including the First and Fourteenth Amendments of the United States

Constitution and 42 U.S.C. §§1983 and 1988, Title IX of the Education Amendments of

1972, 20 U.S.C. § 1681, et seq., or are pendant claims thereto brought under the constitution

and laws of the State of Florida.

6.      Venue is proper in this Court because, at the time of the acts alleged herein giving rise to the

Plaintiffs' claims, Plaintiffs and Defendants were residents of or governmental agencies,

employees and/or agents of governmental subdivisions of the State of Florida, and because

each of the unlawful acts alleged herein were committed within this Court's judicial district.

Furthermore, Plaintiffs demand trial by jury of all issues so triable.

## III. NATURE OF SUIT

7.      This is an action for  injunctive relief, monetary damages and for attorneys' fees and costs

arising out of the wrongful actions taken by Defendants to exercise prior restraint and

censorship against the lawful speech and views held by Plaintiffs solely on the basis of the

religious nature of said speech and views, in violation of the minor Plaintiff's right of free

speech, free exercise of religion, and equal protection of the laws as guaranteed by the First

and Fourteenth Amendments of the United States Constitution, and Article I, §§2, 3, and 4

of the Constitution of the State of Florida, for which actions Plaintiffs seek injunctive relief

---

precluding Defendants from engaging in said prior restraint, compensatory damages and attorneys' fees and costs.

## IV.  FACTUAL BACKGROUND:

### CLAIM ON BEHALF OF SHARAH HARRIS:

8.     Plaintiff is the mother and guardian of Sharah Harris, a student of the twelfth grade at Boca Raton Community High School, in Boca Raton, Florida, and mother and guardian of Brittni Harris, a student of the 11th grade at Boca Raton Community High School in Boca Raton, Florida.

9.     During the month of January or early February 2002 as part of a student government project Sharah, along with the rest of the students in her class, were asked to paint murals that would be placed on the school grounds to beautify barriers preventing students from walking into a construction area on the school's grounds. Each student was to provide their own mural; the only instruction given as to the content of the murals was that it could be the student's own expression.

10.    Sharah Harris, along with other members of a club known as the Fellowship of Christian Athletes, chose a religious subject which contained a verse from the Bible and the words "God Loves You...What part of 'Thou Shall Not' Didn't You Understand?  God." Also inserted in the mural with the sun as a background was a cross.  The word "Jesus" was also included on the mural.

11.    Shortly after the mural was painted Defendant, Ed Harris pulled Sharah out of class and instructed to her to paint over all religious symbols and language contained in the mural;

---

none of the other FCA students were singled out.

12.  In obedience to the directions of school officials, Sharah was required to paint over her and the other students' expressions of religious faith.

13.  Plaintiff, Shelda Harris Bannon, informed the school that this restriction of religious expression was unacceptable, as well as the humiliation and public ridicule Sharah endured for her beliefs and expressions of them.

14.  Defendants refused to relent from their unlawful conduct and persist to this day under the rationale that religious expression by one student might "offend" or make another student uncomfortable.

15.  The actions taken by other unnamed Boca Raton Community High School employees or agents to carry out the school's actions, as alleged herein above, were taken under color of state law and with the actual, constructive, or imputed knowledge the named Defendants, including Defendant DISTRICT pursuant to a policy or custom of Defendant School District, and in furtherance thereof, the acts of Defendant Harris were taken with intentional or reckless disregard of Plaintiffs' clearly established rights to free speech or equal protection and religious exercise., and/or with its express or implied ratification.

16.  Defendants' actions, as stated hereinabove, have caused Plaintiffs substantial  losses, including without limitation, loss of her constitutional and civil rights including the rights of free speech, exercise of religion and equal protection of the laws, and emotional and mental distress, for which Plaintiffs make federal and state claims as set forth hereinbelow.

CLAIM ON BEHALF OF BRITTNI HARRIS:

17.  Plaintiff Brittni Harris was a member of the Boca Raton Community High School girl's

---

basketball team during the 2001-2002 season. Before the season and during the course of the season, Brittni and other members of the Boca Raton High School basketball team were subjected to repeated verbal sexual harassment and intimidation by Defendant Joe Sabia.

18.    Defendant Sabia had, and still maintains, a practice of screaming obscenities at team members, often within extremely close proximity to their faces. Sabia also has a practice of engaging in intimidating and aggressive conduct directed toward team members. This behavior was directed toward Plaintiff and others because of their sex. Sabia's behavior created a severe and pervasive hostile educational environment for Brittni and other members of the team, directly and proximately causing Bretni significantly decreased Brittni's chances of obtaining a college basketball scholarship and substantially limited her educational opportunities at the post-secondary level.

19.    Defendant SCHOOL DISTRICT OF PALM BEACH COUNTY had actual notice of Defendant Savia's behavior, by and through its employees and agents, including but not limited to Defendant Harris. Mr. and Mrs. Bannon and other parents complained repeatedly to school authorities, including to Principal Harris, but, upon information and belief, no disciplinary action has been taken against Sabia to date.

20.    The actions and omissions of Defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et seq., entitling Plaintiffs to compensatory and punitive damages and attorney's fees, and such other and further relier as the Court shall deem necessary and appropriate.

21.    The actions and omissions of Defendants violated Plaintiff's right to equal protection of the law pursuant as guaranteed by the Fourteenth Amendment to the United States Constitution

and Article I, Sec. 2 of the Florida Constitution, entitling Plaintiffs to compensatory and, as

to Defendants Sabia and Harris, punitive damages, as well as attorneys' fees and such other

and further relief as the Court shall deem necessary and appropriate.

## COUNT I: DEPRIVATION OF
## CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983

22.     Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 21

above.

23.     The acts and omissions of Defendants as plead herein deprived Plaintiffs of their rights under

the United States Constitution, Amendments I and IV, and the Florida Constitution, Article

I, §§ 2,3,and 4 of free exercise of religion, free speech, and the equal protection of the laws.

Pursuant to 42 U.S.C. §1983, Plaintiffs hereby seek and sue for damages from Defendants

for their violations of these rights.  Plaintiffs are entitled to recover their actual damages

resulting from Defendants' joint and individual violations of these rights.  Plaintiffs also seek

an award of their reasonable costs and attorney fees incurred herein pursuant to 42 U.S.C.

§1988.

## COUNT II: DEPRIVATIONS OF RIGHTS SECURED BY ART. I, §3,
## OF THE FLORIDA STATE CONSTITUTION (FREEDOM OF RELIGION)

24.     Plaintiffs re-allege and incorporate herein the allegations set forth in paragraphs 1 through

23 above.

25.     The Constitution of the State of Florida provides, at Article I, § 3, that "[t]he free exercise

and enjoyment of religious profession and worship, without discrimination, shall forever

hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his opinions concerning religion." By discriminating against the religious views held and espoused by Plaintiffs, and exercising prior restraint against the expression of said religious views, Defendants have jointly and individually violated Plaintiffs rights under Article I, § 3. Plaintiffs hereby seek and sue for damages from Defendants for their violations of these rights.

## COUNT III:  PUNITIVE DAMAGES

26. Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 25 above.

27. Additionally and in the alternative, the unlawful acts of Defendants DISTRICT, Harris and Sabia described above were carried out in such a willful, wanton, grossly negligent and/or malicious fashion, that punitive damages sufficient to deter said Defendants and others like them from engaging in such lawless acts in the future are required, for which Plaintiffs hereby sue.

## COUNT IV:  INJUNCTIVE RELIEF

28. Plaintiffs re-allege and incorporate herein the allegations set forth in paragraphs 1 through 27 above.

29. In addition to the causes of action set forth hereinabove, Plaintiffs pray for injunctive relief as follows:

1. A declaration that the actions taken by Defendants THE SCHOOL DISTRICT OF

PALM BEACH COUNTY, a body corporate, ED HARRIS, and JOE SABIA in their capacity as principal of BOCA RATON COMMUNITY HIGH SCHOOL and GIRL'S BASKETBALL COACH OF BOCA RATON COMMUNITY HIGH SCHOOL were unlawful and in derogation of Plaintiffs' constitutional rights under the United States and Florida State constitutions; and

2. An order directing Defendants THE SCHOOL DISTRICT OF PALM BEACH COUNTY, a body corporate, and ED HARRIS in his capacity as principal of BOCA RATON COMMUNITY HIGH SCHOOL to immediately cease and desist from exercising any prior restraint over the content or viewpoints sought to be expressed by Plaintiffs on the murals designated for such purposes by Defendants, allow the minor Plaintiff to re-paint those parts of the mural she was required to cover, and to refrain from taking any further acts discriminatory of Plaintiffs' religious beliefs and viewpoints or retaliatory of the lawful actions taken by Plaintiffs to secure said rights.

3. An order directing Defendants THE SCHOOL DISTRICT OF PALM BEACH COUNTY, a body corporate, and JOE SABIA in his capacity as girl's basketball coach of BOCA RATON COMMUNITY HIGH SCHOOL to approve a transfer of BRITTNI HARRIS to another school allowing her to pursue her athletic scholarships, or dismiss JOE SABIA as the girl's basketball coach at BOCA RATON COMMUNITY HIGH SCHOOL in order for her to return to that program.

## COUNT V: ATTORNEYS' FEES

---

30.    Plaintiffs re-allege and incorporate herein the allegations set forth in paragraphs 1 through 29 above.

31.    Plaintiffs seek attorneys' fees pursuant to Florida Statute 760.10 and 18 U.S.C. §1988 and other applicable statutes.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, jointly and severally, for all of their actual damages, for punitive damages against Defendants Harris, Sabia, and the DISTRICT in a lawful amount sufficient to deter said Defendants and others similarly situated from engaging in the unlawful acts described above, for attorneys' fees and costs of court and for all other just relief.

SOLMS & PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Telephone Number: 305-662-2272
Fax: 305-667-3975

WILLIAM O. SOLMS, JR
Florida Bar No. 185970

OF COUNSEL:
STEVEN H. ADEN, ESQ.
THE RUTHERFORD INSTITUTE
P.O. Box 7482
Charlottesville, VA 22901
Tel.: (434) 978-3888
Fax: (434) 978-1789

---

School Board Policy **2.122**

**RELIGIOUS FREEDOM**

A.   The Palm Beach County School Board recognizes that employees and students have the right to freely practice their religion and engage in religious activities on their own time outside of school activities and functions. In order to assure the religious freedom of all, the Board cannot sponsor, financially support, or be actively involved in religious activities. It must not be hostile to or supportive of any religion, although it must, if possible, accommodate the religious practices and beliefs of all employees and students.

B.   This policy of neutrality on religion should not be perceived as conveying a message of endorsement or disapproval of any or all religions or religious organizations, or of those holding no religious beliefs.

C.   In keeping with this policy of neutrality, Board employees cannot, in their official Board capacities:

1.   Encourage or discourage student participation in religious activities, clubs, education, or services;

2.   Advance or disparage any religion or religious belief; or

3.   Grant or deny any grade, honor, or other recognition based upon a student's religious preference or lack of it.

D.   Because of their special relationship to their students, school administrators and teachers must all times be mindful of their roles and not use their position to advance or disparage any religion or religious belief. School facilities and property may not be used in any manner which would be perceived as endorsement or disapproval by the Board of any religion or religious belief.

E.   No form of religious or non-religious expression may include any activity that is unlawful or that materially and substantially interferes with the orderly conduct of educational activities of the school.

| | |
|---|---|
| STATUTORY AUTHORITY: | § 230.23(17); 230.23005; Fla. Stat. |
| LAWS IMPLEMENTED: | U.S. CONST., amend. I; The Civil Rights Act of 1964 ("Title VII") § 703 (a)(1), as amended by The Civil Rights Act of 1991, 42 U.S.C. § 2000e (a)(1); § 761.03, Fla. Stat.; 29 C.F.R. § 1605 |
| HISTORY: | 4/21/99 |

Page 2.151

EXHIBIT "2"