IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

SHELDA HARRIS BANNON, as
parent and natural guardian of her daughters,
SHARAH HARRIS and BRITTNI HARRIS,

CIVIL CASE NO. 02-80438-CIV-Hurley/Lynch

    Plaintiffs,

vs.

THE SCHOOL DISTRICT OF
PALM BEACH COUNTY, a body corporate,
ED HARRIS, individually and in his capacity as principal of
BOCA RATON COMMUNITY HIGH SCHOOL, and
JOE SABIA, individually and in his capacity as Girl's
Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL,

    Defendants.
_____/

## MEMORANDUM IN OPPOPSITION OF

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. THE DEFENDANTS' CENSORSHIP OF PLAINTIFFS' EXPRESSION VIOLATED THE FIRST AMENDMENT

Having chosen to open a limited public forum for expression by students and staff members at Boca Raton Community High School, the Defendants were bound to respect the limitations on censorship of student speech imposed by the First Amendment. *See Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995); *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983). The Defendants



Page 1 of 12

violated the Plaintiffs' First Amendment rights by censoring their expression in this limited public forum on the basis of its religious viewpoint. *Good News Club v. Milford Central School*, 533 U.S. 98, 106.

### A. THE DEFENDANTS OPENED A LIMITED PUBLIC FORUM FOR STUDENT AND STAFF EXPRESSION ON THE CONSTRUCTION WALLS

At the request of the Student Council of Boca Raton Community High School and its faculty sponsor Kathy Roberts, Principal Ed Harris approved a project in which students or staff members were permitted to paint panels of the construction walls at the school. (Ed Harris Dep. 40). The project was conducted as a fund-raiser by the Student Council. Students or staff members who paid a small fee were permitted to express themselves freely in their artwork on the construction walls. (Ed Harris Dep. 42-43). The only limitations on the students' expression was that their artwork could not be profane or "offensive to someone." (Ed Harris Dep. 42). The Defendants placed no limitations on the subject matter of students' artwork other than these instructions. Thus, the construction wall painting project was a limited public forum for expression by students and staff members of the school.

Moreover, assuming, as the Defendants argue, that the construction walls were not a designated or limited public forum, the Defendants' censorship of Plaintiffs' religious expression on the basis of its religious viewpoint is nevertheless unconstitutional. The Supreme Court has repeatedly held that even in a nonpublic forum government discrimination against a speaker's viewpoint is only permissible if it is narrowly tailored to satisfy a compelling state interest. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). Because, as explained below, the Defendants lacked such an interest, the

censorship of Plaintiffs' speech violated the First Amendment.

1. **The First Amendment Prohibits the Defendants From Censoring Plaintiffs' Religious Expression in this Limited Public Forum.**

The First Amendment severely limits the government's authority to limit expressive activity in "public property which the State has opened for use by the public as a place for expressive activity." *Perry Education Ass'n v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45 (1983). Even when the government "is not required to indefinitely retain the open character of [a] facility, as long as it does so it is bound by the same standards as apply in a traditional public forum." *Id.* at 46. Thus, in such limited public forums, the government "must not discriminate against speech on the basis of viewpoint." *Good News Club v. Milford Central School*, 533 U.S. 98, 106 (2001); *Rosenberger*, 515 U.S. at 829. Furthermore, "reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Perry*, 460 U.S. at 46; *Widmar v. Vincent*, 454 U.S. 263, 269-70 (1980).

2. **The Defendants Censored Plaintiffs' Artwork on the Basis of its Religious Viewpoint.**

After complaints from a teacher that she was offended by the crosses, Bible verses, and the words "God" and "Jesus" in the Plaintiffs' murals on the construction wall, Principal Harris ordered the Plaintiffs' artwork to be painted over. (Ed Harris Dep. 57). The Supreme Court has clearly held that "speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Good News Club*, 533 U.S. at 112. The Defendants do not argue, nor could they, that the

Plaintiffs' artwork was impermissible for some reason other than the religious viewpoint it expressed. Such patent discrimination on the basis of the Plaintiffs' religious viewpoint violates the First Amendment. *Good News Club*, 533 U.S. at 112; *Rosenberger*, 515 U.S. at 831; *Lamb's Chapel*, 508 U.S. at 394.

The Defendants apparently concede that the decision to censor Plaintiffs' artwork was due to objections to its religious message. Nevertheless, the Defendants attempt to justify the censorship by arguing that it was necessary to avoid an Establishment Clause violation. (Def. Memorandum of Law, p. 2-3). The Supreme Court has never held that a school's asserted interest in avoiding an Establishment Clause violation would justify discrimination against a religious viewpoint. *Good News Club*, 533 U.S. at 112-13. See also *Lamb's Chapel*, 508 U.S. at 394-95. In fact, in *Good News Club*, 533 U.S. at 113, the Court expressed doubt that such a justification would suffice to permit a school to censor speech from a religious viewpoint. ("It is not clear whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination.") As explained below, however, even assuming that a school's interest in avoiding an Establishment Clause violation would be sufficient to justify government censorship of a religious viewpoint, the Defendants had no valid Establishment Clause interest.

**B.  DEFENDANTS HAD NO VALID ESTABLISHMENT CLAUSE INTEREST TO JUSTIFY THEIR CENSORSHIP OF PLAINTIFFS' EXPRESSION**

Even assuming that an interest in avoiding an Establishment Clause violation would justify Defendants' censorship of Plaintiffs' religious expression, the Establishment Clause did not require the Defendants to censor Plaintiffs' artwork.

Page 4 of 12

The Establishment Clause justification now advanced by the Defendants is a post-hoc rationalization for the Defendants' actions. Principal Harris conceded that had no one complained about the artwork, he would not have had it removed. (Ed Harris Dep. 69). Harris stated, "[I]f no one had complained and it was not going to be offensive to the school, I wouldn't have a problem with it." (Harris Dep. 69-70). Thus, the justification for the censorship of Plaintiffs' artwork at the time the Defendants' censorship decision was made was the alleged offensiveness of their artwork (to a teacher), not any concern that the artwork itself violated the Establishment Clause.

### 1. The Establishment Clause Does Not Require the Censorship of Plaintiffs' Religious Expression in the Context of a Noncurricular Art Project Open to all Students and Staff Members.

The Defendants argue that permitting the students' artwork to remain on school property would cause a reasonable observer to believe that the school endorsed their religious messages. The School also argues that the censorship of Plaintiffs' speech was necessary to maintain the school's "neutrality" toward religion. These assertions are contrary to the decisions of the weight of authority and find no support in the cases cited by Defendants.

"[A] significant factor in upholding governmental programs in the face of Establishment Clause attack is their *neutrality* towards religion." *Good News Club*, 533 U.S. at 114, quoting *Rosenberger*, 515 U.S. at 839 (emphasis in *Good News Club*). In *Good News Club*, 533 U.S. at 114, the Court rejected the Defendant school's argument that preventing a Bible Club from meeting at the school while permitting secular groups to meet at the school was necessary to maintain the school's neutrality toward religion, saying that the assertion "defies logic." "[T]he 'guarantee of neutrality is respected, not offended, when the government, following neutral

criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." *Id.* at 114. Like the Plaintiffs in Good News Club, the Plaintiffs in the instant case seek no special treatment, but rather seek only to be afforded equal treatment with other speakers. Thus, because allowing Plaintiffs to express themselves according to the same standards applicable to other speakers "would ensure neutrality, not threaten it," the Defendants "face an uphill battle in arguing that the Establishment Clause compels [them] to exclude the [Plaintiffs' speech]." *Id.* at 114.

The Plaintiffs themselves painted the artwork on the construction walls outside of school hours. Moreover, their murals were not preapproved by school officials or part of the school's curriculum. As the Supreme Court has explained, "[t]here is a crucial difference between *government* speech endorsing religion which the Establishment Clause forbids, and *private* speech endorsing religion which the Free Speech and Free Exercise Clauses protect." *Board of Education of Westside Schools v. Mergens*, 496 U.S. 226, 250 (1990) (emphasis in original). The Supreme Court and the Circuit Courts have repeatedly held that the presence of private religious messages or practices on government property does not violate the Establishment Clause. *Pinnette*, 515 U.S. 753, 763-6 (1995) (cross on a state-owned plaza across from state capitol building does not violate Establishment Clause where plaza opened to all speakers); *Mergens*, 496 U.S. at 248-53 (1990) (Bible club conducted by students on school property does not violate Establishment Clause); *Lamb's Chapel*, 508 U.S. at 395 (no violation of Establishment Clause for church to show religious film after school hours on school property); *Rosenberger*, 515 U.S. at 839-40 (school funding of Christian newspaper does not violate Establishment Clause where funding is available to all student groups equally); *Widmar v. Vincent*, 454 U.S. 263 (allowing university students to use room to conduct

prayer and worship service does not violate Establishment Clause); *Travis v. Owego-Apalachin School Dist.*, 927 F.2d 688, 694 (2nd Cir. 1991) ("having an opened door policy that happens to allow religious speech does not 'endorse' or 'establish' a religion"); *Hedges v. Wauconda*, 9 F.3d 1296, 1298-1300 (7th Cir. 1994) (Establishment Clause not violated where junior high students handed out religious literature before and after class); *Fairfax Covenant Church v. Fairfax City School Board*, 17 F.3d 703 (4th Cir. 1994) (church services held at school after school hours does not violate the Establishment Clause where school is opened to entire community); *Concerned Women for America v. Lafayette County*, 883 F.3d 32, 35 (5th Cir. 1989) (private group religious discussion, prayer, and Bible reading in a public library does not violate the Establishment Clause).

In *Good News Club*, 533 U.S. at 113, the Supreme Court held that a school had no valid Establishment Clause interest in preventing an after-school Bible club from meeting at the school. The Court stressed that the school permitted a range of different organizations to use its facilities for meetings. *Id.* Similarly, the Defendants in the instant case permitted any students or staff members who wished to do so to paint murals on the construction walls. Placed in this context, a reasonable observer would not erroneously conclude that the Defendants endorsed the Plaintiffs' religious message.

In *Pinette*, the Supreme Court held that the Establishment Clause did not require a state to order the removal of a cross displayed by a private individual in a park located next to the state capitol. *Lamb's Chapel*, 515 U.S. at 763-6 (1995). The park was open to the private expression of the public generally. The Court rejected the argument that the presence of the cross on public property near the state capitol might present the appearance that the state endorsed the religious message. *Pinette*, 515 U.S. at 763-64 and Justice Scalia, writing for the plurality, noted that:

> If [the State] is concerned about misperceptions, nothing prevents it from requiring private displays in the Square to be identified as such. That would be a content-neutral manner restriction that is assuredly constitutional. But the State may not, on the claim of misperception of official endorsement, ban all private religious speech from the public square.
>
> Religious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms.

515 U.S. at 770, (internal citations and quotations omitted). Similarly, as it concerns "private speech that occurs in a limited public forum, publicly announced, whose boundaries are not drawn to favor religious groups but instead permit a cross-section of uses ... 'erroneous conclusions [about endorsement] do not count." *Good News Club*, 533 U.S. at 121 (Scalia, J., Concurring), quoting *Pinette*, 515 U.S. at 765, (brackets in original).

Furthermore, there is simply no reasonable likelihood that a reasonable observer would perceive the Plaintiffs' murals, among the 53 total murals, as the school's endorsement of religion. "[T]he reasonable observer in the endorsement inquiry must be deemed aware' of the 'history and context' underlying a challenged program," *Zelman v. Simmons-Harris*, 112 S.Ct. 2460, 2468-69 (2002). A reasonable Boca Raton Community High School student or adult charged with a knowledge of the 'history and context' of the construction wall painting project would recognize that the Plaintiffs' religious expression was their own and bore no imprimatur of the school. As Justice O'Connor stated while writing for the plurality in *Mergens*, 496 U.S. at 250 (O'Connor, J., Concurring), "[w]e think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis."

Moreover, because the murals would have been only temporarily displayed, the concern that some future bystander, unaware of the context in which the murals were painted, would have erroneously believed that the school endorsed the religious message was endorsed by the school is even more misplaced. Thus, there exists no reasonable likelihood that such a bystander would have perceived the Plaintiffs' murals as the school's endorsement of their religious message. However, assuming that a bystander could have erroneously believed that the school endorsed the religious messages, the Defendants could have alleviated this concern by requiring that the murals clearly state that they were created by private individuals and were not endorsed by the school. See *Pinette*, 515 U.S. at 770. (Plurality). Thus, even if the Defendants had a valid Establishment Clause interest and that interest would justify censoring the Plaintiffs' religious expression, the decision to paint over the Plaintiffs' murals was not "narrowly tailored" to effectuate that interest. *Perry*, 460 U.S. at 46.

Finally, it is at least as likely that a bystander would perceive the Defendants' censorship of private religious expression as hostility toward the Plaintiffs' religious viewpoint. See *Good News Club*, 533 U.S. at 118. (discounting the concern that high school students would perceive a Bible Club's meetings on school property on the same terms as other clubs while emphasizing the danger that high school students or members of the public might perceive that the school was hostile toward religion if it excluded the Bible Club from the otherwise open forum).

### 2. **The Cases Cited by the Defendants are Inapposite.**

The cases cited by Defendants do not support the proposition that the Establishment Clause

compelled Defendants to censor Plaintiffs' personal religious expression. *Washegesic v. Bloomingdale Public Schools*, 813 F. Supp. 559 (W.D. Mich. 1993), concerned a school's own display for approximately thirty years of a picture of Jesus Christ in a prominent position in the school hallway. Moreover, the painting in that case was not part of any larger display of historical figures. *Id.* at 560. The court held that the school's display of the portrait had no secular purpose. *Id.* at 563. *Washegesic* has little bearing on the instant case in which students, not the school itself, are responsible for the religious expression. Moreover, unlike in *Washegesic*, the Plaintiffs' religious expression was placed in the context of over fifty other non-religious murals painted by other students and staff members. Similarly, in *Stone v. Graham*, 449 U.S. 39 (1980), the Supreme Court held that a state law requiring the display of the Ten Commandments on classroom walls violated the Establishment Clause because it lacked a secular purpose. The instant case, by contrast, concerns private student speech endorsing religion not government speech endorsing religion, a critical distinction explicitly drawn by the Supreme Court. *Mergens*, 496 U.S. 226, 250.

In *Joki v. Bd. of Educ. of the Schuylerville Central Sch. Dist.*, 745 F.Supp. 823, 831 (N.D. NY 1990), a New York Federal District Court held that a painting of a crucified Jesus Christ permanently displayed for twenty years in the school's auditorium violated the Establishment Clause. However, the court emphasized that the painting stood alone in the school auditorium and was not placed in any context which would have negated the impression that the school endorsed the painting's religious message. *Id.* at 831-32. By contrast, the Plaintiffs' murals were to be only temporarily displayed among over fifty other murals, effectively negating any impression that the Defendants' endorsed the Plaintiffs' message. Finally, the Defendants' final case. *Gernetzke v. Kenosha Unified Sch. Dist.*, 274 F.3d 464 (2001) was not decided on the merits and did not even

involve a free speech claim.

### C. HAZELWOOD V. KUHLMEIER DOES NOT PERMIT DEFENDANTS TO CENSOR PLAINTIFFS' SPEECH ON THE BASIS OF ITS RELIGIOUS VIEWPOINT.

The Defendants' censorship of Plaintiffs' murals was also not authorized by the Supreme Court's decision in *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1988). In *Hazelwood*, the Court held that "educators may exercise control over student expression in a curricular program if the restrictions are 'reasonably related to legitimate pedagogical concerns.'" *Searcy v. Harris*, 888 F.2d 1314, 1319 (11th Cir. 1999), quoting *Hazelwood*, 484 U.S. at 273. However, the Eleventh Circuit has held that the less stringent *Hazelwood* standard applies only to curricular expression. *Id.* at 1319 n.7. Even after *Hazelwood*, noncurricular student expression remains governed by *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969), and may only be censored if it will materially disrupt the operation of the school. *Searcy*, 888 F.2d at 1319 n.7, citing *Tinker*, 393 U.S. at 509. The construction wall painting project at issue in this case was not part of the curriculum at Boca Raton Community High School. Students were not required to participate and they received no grade or credit for participation in the project. The murals were painted by students outside of regular school hours on a Saturday and a $5 fee was required for participation in the project. Thus, the project was noncurricular student expression and *Tinker* not *Hazelwood* governs. *Searcy*, 888 F.2d at 1319 n.7.

Furthermore, even if the murals were curricular expression such that *Hazelwood* applied, the First Amendment would prohibit the Defendants from censoring Plaintiffs' expression on the basis of viewpoint. The Eleventh Circuit has held that "[a]lthough the Supreme Court did not discuss viewpoint neutrality in *Hazelwood*, there is no indication that the Court intended to drastically rewrite First Amendment law to allow a school official to discriminate based on a speaker's views." *Searcy*, 888 F.2d at 1319 n.7. As previously discussed, the Defendants censored Plaintiffs'

expression based on its religious viewpoint. Thus, even assuming that the more lenient *Hazelwood* standard applies, the Defendants' censorship of Plaintiffs' murals iolated the First Amendment.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was faxed and mailed this 20th day of March, 2003 to Sandra Bosso-Pardo, Esq. THE SCHOOL BOARD OF PALM BEACH COUNTY, 3318 Forest Hill Boulevard, Suite C302, West Palm Beach, Florida 33406.

SOLMS & PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Telephone Number: 305-662-2272
Fax: 305-667-3975

BY: _____
WILLIAM O. SOLMS, JR