UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

SHELDA HARRIS BANNON, as
parent and natural guardian of her daughters,
SHARAH HARRIS and BRITTNI HARRIS,

    Plaintiffs,

vs.

THE SCHOOL DISTRICT OF
PALM BEACH COUNTY, a body corporate,
ED HARRIS, individually and in his capacity as Principal
of BOCA RATON COMMUNITY HIGH SCHOOL, and
JOE SABIA, individually and in his capacity as Girl's
Basketball Coach of BOCA RATON COMMUNITY
HIGH SCHOOL,

    Defendants.

CASE NUMBER: 02-80438 CIV
HURLEY/LYNCH

**DEFENDANTS'
REPLY MEMORANDUM
TO PLAINTIFFS'
MEMORANDUM IN
OPPOSITION OF
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT**

COME NOW the Defendants, THE SCHOOL DISTRICT OF PALM BEACH COUNTY, ED HARRIS, individually and in his capacity as Principal of BOCA RATON COMMUNITY HIGH SCHOOL, and JOE SABIA, individually and in his capacity as Girl's Basketball Coach of BOCA RATON COMMUNITY HIGH SCHOOL, by and through their undersigned attorney and reply to the Plaintiffs' Memorandum in Opposition of Defendants' Motion for Summary Judgment as follows:

## STIPULATION

By stipulation of the parties, Plaintiffs will be filing a Notice of Voluntary Dismissal as to the claims against ED HARRIS, individually, and the claims against JOE SABIA, individually, and the only issue to be submitted to the Court for consideration will be the Defendant, THE

-1-

Bannon etc. v. The School District of Palm Beach County, etc. et al.
Case No. 02-80438 CIV Hurley/Lynch
Page 2

SCHOOL DISTRICT OF PALM BEACH COUNTY's, ability to limit or regulate expression in the school.

## **THE SCHOOL WAS NOT A PUBLIC FORUM**

The entire premise of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment is that the school in question was a public forum or a limited public forum. Even though the Plaintiffs' Memorandum refers to the school site as a limited public forum, it cites case law relating to traditional or designated public fora. (Older cases seem to blur the distinction between public and limited public fora, as discussed below.) Therefore, much of the case law cited is inapplicable.

First of all, it is clear that a school operating during normal school hours, as opposed to when engaged in extracurricular or after hour activities, is not a public forum. (Although arguably it may be a limited public forum for extra curricular activities.) Based on the definitions found below, during school hours it is a non-public forum or a closed public forum.

The case of Chiu v. Plano Independent School District, 260 F.3d 330 (5th Circuit 2001) defines the three types or levels of fora, a traditional (or designated) public forum, a limited public forum, or a non-public forum. The court in Chiu defines a traditional public forum as a place that by long tradition or government fiat has been devoted to assembly or debate such as a street or public park. (Chiu, p. 344.) In order to regulate a party's expression in a traditional (or designated) public forum, the State must withstand strict scrutiny and must show that any content based prohibition serves a compelling State interest and is narrowly tailored. Chiu (supra) also acknowledges that just because a government entity may permit limited discourse or selective access, it does not automatically create a public forum. A forum may be considered nonpublic where the nature of the property at issue is inconsistent with the expressive activity, indicating

Bannon etc. v. The School District of Palm Beach County, etc. et al.
Case No. 02-80438 CIV Hurley/Lynch
Page 3

that the government did not intend to create a public forum. (Chiu, p. 347) The court explains that public property that is not open by tradition or designation for pubic communication is governed, for First Amendment purposes, by standards that apply to a non-public forum. Chiu, p. 347. Clearly, a school is not a traditional (or designated) public forum.

## THE SCHOOL HAD NOT OPENED A LIMITED PUBLIC FORUM BY THE EXISTENCE OF EXTRA-CURRICULAR ACTIVITIES

The most important distinction which has not been made by the Plaintiff is that just because a school could be a limited public forum after school in which they grant access to various school clubs, i.e. the Boy Scouts, Fellowship of Christian Athletes (which was the club to which the Plaintiff belonged) and other civic groups, it does not necessarily mean that activities at the school during school hours and on school property, create a limited public forum. The school can retain its nonpublic identity during the school day when the students are present and when the educational function of the school is underway. School officials may designate a public forum for a limited time and topic. (Chiu, supra, p. 348)

The Plaintiff argues that since the students were allowed to "express themselves freely" in their artwork in the student council fundraiser, the school had opened itself as a limited public forum. This is erroneous. The faculty sponsor and the principal retained the right to deem any submission inappropriate. Is there any doubt that the principal had the right to require removal of gang symbols or satanic symbols which were affixed to school property and displayed during school hours? Therefore, by merely having the project the school did not become a limited public forum. Selective access to organizations such as the Y.M.C.A., the scouts, or church groups, does not transform government property into a public forum. (Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 47 (1983) – cited by Plaintiffs.)

Case 9:02-cv-80438-DTKH   Document 55   Entered on FLSD Docket 03/31/2003   Page 4 of 7

Bannon etc. v. The School District of Palm Beach County, etc. et al.
Case No. 02-80438 CIV Hurley/Lynch
Page 4

## A SCHOOL MAY RESTRICT CURRICULAR EXPRESSION TO A GREATER EXTENT THAN EXTRA CURRICULAR ACTIVITIES

Plaintiff also argues that the murals were painted after school hours, i.e. it was "extra curricular". This may be true, but the murals themselves were **DISPLAYED AND EXPRESSED** during school hours and were unavoidably seen by students who had not been involved in their painting. Whether the expression occurs during or after school hours is a crucial distinction found by the United States Supreme Court in the Good News Club v. Milford Central School, 533 U.S. 98 (2001) cited by the Plaintiff. The Good News Club court distinguished the decisions in Lambs Chapel v. Center Moriches Union Free School Dist., 508 U.S. 384 and Widmar v. Vincent, 454 U.S. 263 (1981), (cases relied upon by the Plaintiffs) by pointing out this distinction. In those cases (contrary to the case at bar), the expressive activity was not during school hours, not sponsored by the school and would have been open to the public not just to club members. Likewise, in Good News Club, the club's meetings were held after school hours, not sponsored by the school and open to any student who obtained parental consent, not just to club members. The court contrasted the decisions in Lambs Chapel and Widmar to the decisions in Lee v. Weissman, 505 U.S. 577 (1992) and Sante Fe Independent School District v. Doe, 530 U.S. 290 (2000) (both cited by the Defendants in their initial Memorandum). The decision in Lee was largely based upon the fact that attendance at the graduation exercise was **OBLIGATORY**. (Good News Club, p. 115) Likewise, the court explained its distinction in Sante Fe Independent School District v. Doe when it declared the school's policy of permitting student initiated prayer on the P.A. system at football games unconstitutional where the activity took place during a school sponsored event and not in a public forum. The Good News Club court likewise, distinguished its decision in Edward v. Agilard, 482 U.S. 578 (1987), because the

proposed expressive activity was in a classroom which required **MANDATORY ATTENDANCE** and it was occurring during the school day. (Good News Club, pp 116 and 117)

## EVEN IF THE SCHOOL WAS A LIMITED PUBLIC FORUM, SPEECH MAY STILL BE REGULATED

Assuming, arguendo that a limited public forum was created, the school could still restrict speech. A limited public forum is not the same as a public forum. Chiu distinguishes a limited public forum from a public forum by focusing on two factors: (1) the government's intent with respect to the forum and (2) the nature of the forum and its compatibility with the speech at issue. (Chiu p. 346) In the Good News Club, the United States Supreme Court acknowledged that there was a conflict among the Court of Appeals on the question of whether speech could be excluded from a limited public forum on the basis of the religious nature of the speech. The court concluded that it depended on the nature of the forum. The court specifically acknowledged that a State may restrict certain groups or discussion to certain topics if it is a limited public forum. (Good News Club, p 106)

The court further recognized further that in a limited public forum, the government may restrict expression that takes place within that forum as long as the restriction does not discriminate against speech on basis of viewpoint and is reasonable in light of the purpose served by the forum. Even if a school is determined to be a limited public forum, the State is not required to and does not allow persons to engage in every type of speech and may restrict the speech based upon its legitimate concerns. (Good News Club, p. 98 and 106) Legitimate concerns of a school include the goal of harmony and lack of distraction to the educational mission.

Bannon etc. v. The School District of Palm Beach County, etc. et al.
Case No. 02-80438 CIV Hurley/Lynch
Page 6

Principal Harris testified in his deposition that he had pedagogical concerns which prompted his request to edit the mural in question. He testified that some gang symbolism and satanic symbolism were removed, along with the religious symbolism. As is clearly evident from the case law cited in Defendants' original initial Memorandum, a principal during school hours and on school property may limit speech that may reasonably interfere or disrupt the educational mission of the school. Ed Harris testified that the controversy was brewing over the content of several murals, not just the Plaintiff's mural and he exercised his authority as principal to curtail any possible controversy or disruption by ordering the murals edited. (See Diloreto v. Downey Unified School District Bd. Of Education, 196 F.3d 958 (9th Cir. 1999), where the court held the school district could exclude an advertisement from the baseball field fence containing the Ten Commandments based on their desire to avoid disruption or controversy.)

Harmony has been specifically determined to be a legitimate basis upon which to restrict speech. In Perry, supra, (cited by the Plaintiff), a case involving an alleged free speech violation by a rival educators union, the court found that labor peace may be a sufficient basis on which to justify restrictions on expression (Perry, p. 52). In addition, in Perry, footnote 12, the United States Supreme Court commented that it did not require that there be proof of disturbance to justify denial of access to a nonpublic forum on the grounds that the proposed use may disrupt the property's intended function. In other words, the School District is not required to allow the speech and thereby incur the consequences; the principal's anticipation or apprehension of controversy or disruption would be sufficient. Although factually different (Perry was a case involving the use of the school's mail system by the elected labor organization while denying access to its rival) the court held that the denial was not viewpoint discrimination. In Perry, the

Bannon etc. v. The School District of Palm Beach County, etc. et al.
Case No. 02-80438 CIV Hurley/Lynch
Page 7

court again reiterated that a State may draw distinctions relating to the special purpose of the property, i.e., in the case at bar, educational or pedagogical purposes). (Perry, p. 55)

The cases cited by Plaintiffs are clearly inapplicable or distinguishable. The cases cited by the Plaintiffs for the most part discuss public fora, not schools which are nonpublic and which are mandatorily attended by students. The activity, although ostensibly painted extra-curricular was displayed and had its impact during curricular time. The Plaintiffs' claim that the cases cited by Defendants are inapposite is incorrect, and the cases cited in the Defendants' initial Memorandum (Lee, Hazelwood et al.) are controlling in this case.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail this 27th day of March, 2003 to:

William O. Solms, Jr., Esquire
Solms & Price, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143

Steven H. Aden, Esquire
The Rutherford Institute
P.O. Box 7482
Charlottesville, VA 22901

> THE SCHOOL DISTRICT OF PALM
> BEACH COUNTY
> 3318 Forest Hill Boulevard, Ste. C302
> West Palm Beach, FL 33406
> Telephone: 561-434-8750
> Facsimile: 561-434-8105
>
> By: _____
> SANDRA BOSSO-PARDO, ESQ.
> Fla. Bar No.: 275042

S:\Public\1544 Bannon v. SDPBC\Reply to Pltfs Memorandum in Opposition